## Case No. 10,515.

### ONEALE v. CALDWELL et al.

#### [3 Cranch, C. C. 312.] [1]

Circuit Court, District of Columbia. May Term, 1828.

STATUTE OF FRAUDS — BY WHOM PLEADED — REDEMPTION FROM TAX SALE—"LEGAL REPRESENTATIVE" — POSSESSION GIVEN BY WRIT OF INJUNCTION.

1. The statute of frauds, which requires that a declaration of trust of lands should be in writing, can be pleaded only by him who has the legal estate, and is sought to be charged with the trust.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

2. A purchaser, under a decree for the sale of the real estate for deficiency of personal estate, will be authorized by the court to redeem the property from a tax-sale, and will be allowed to deduct from the purchase-money, the amount paid for such redemption.

3. The purchaser under a decree of the court is the "legal representative" of the proprietor, who was chargeable with the tax, and is entitled, within two years after the tax-sale, to redeem the property under the first provision of the 10th section of the city charter of 1820, upon payment of the taxes and expenses of sale paid by the purchaser, with 10 per cent. per annum as interest thereon; and is not bound to pay for any improvements, nor for interest on taxes paid after the tax-sale.

[Cited in Smith v. Taylor, 2 Wash. St. 422, 27 Pac. 813.]

4. The word "reinstate" must be construed to apply as well to the "legal representative" of the proprietor charged with the tax, as to the proprietor himself.

5. A court of equity which decrees a sale of real estate has authority, in Washington county, to cause the purchaser under its decree to be put in possession by a writ of injunction, and if that be disobeyed by a writ of habere facias possessionem.

In this case, the court, as a court of equity, having issued an injunction commanding the defendants to deliver possession of the land to the purchaser, under its decree, &c., the following statement of the case, and reasons for the decision of the court, were drawn up, and communicated to the counsel of the parties, at their request, by CRANCH, Chief Judge.

This was a bill in chancery, filed 11th June, 1822, by William Oneale, in behalf of himself and other creditors of the estate of Alexander McCormick, deceased, praying for a sale of the real estate for defect of personal assets; and charging that certain deeds, made by the said Alexander McCormick to the defendant Timothy Caldwell, were without consideration, and that Caldwell only held as trustee for McCormick and his heirs; that some of the defendants are infants, and that Caldwell resides out of this district. All the defendants appeared by Mr. Swann, their solicitor, and, as to so much of the bill as seeks to subject the property, upon the ground that it was conveyed by McCormick to Caldwell in trust for the use of McCormick and his heirs, pleaded the statute of frauds in bar, namely, that no action shall be brought whereby to charge any person upon any contract for the sale of lands, &c., or any interest in the same, unless the agreement be in writing; (29, c. 2, cl. 3, §§ 3 and 4,) and they charged that neither the said Alexander McCormick, nor any person for him, ever made any contract or agreement in writing, for the making, or declaring, or executing any such trust as is alleged in the bill. That plea was filed 20th June, 1823, and not accompanied by any answer to the residue of the bill.

THE COURT overruled the plea, thinking that the declaration of trust required by the

statute, was a declaration to be made by Caldwell, and not a declaration by McCormick. Caldwell is the person sought to be charged by the trust, and the statute is a defence to him only. An averment that McCormick made no declaration of trust is an immaterial averment.

The plea being overruled, and the residue of the bill, (that is, the part not covered by the plea,) being taken for confessed, (2 Madd. Ch. Prac. 295,) THE COURT, on the 5th of December, 1826, decreed a sale of the property, which was made on the 14th of March, 1827. Robert Leckie purchased lots twenty-six, twenty-seven, and twenty-eight in square seven hundred and twenty-nine, and D. D. Arden purchased lots three, five, and six, in square eight hundred and thirty-six, which sales were confirmed by the court on the 14th of June, 1827.

On the 16th of June, 1827, Robert Leckie filed his petition, setting forth his purchase, and his compliance with the terms of sale, and that the defendants, the heirs of McCormick, refused to give him possession, and praying for the interposition of the court to put him in possession. Whereupon THE COURT, on the same day, ordered them to show cause on the last Monday of October, why Mr. Leckie should not be put into possession, provided a copy of the order should be served on them, one month before that day. This rule was enlarged to the 2d of November, and further to the 12th of May, 1828.

On the 15th of May, 1827, Mr. Leckie had filed another petition stating that before the sale made under the decree of this court, the property had been sold for taxes, and bought in by W. J. McCormick, one of the defendants; that the time for redemption had not expired, and praying that he might redeem and be allowed the amount out of his notes given for the purchase-money. That the defendant W. J. McCormick, administrator of the intestate, had assets, out of which he ought to have paid the taxes, but he suffered the lots to be sold, and bought them in, himself.

Upon this petition, THE COURT, on the 15th of May, 1827, ordered that upon Mr. Leckie's paying all the amount of taxes, and all costs and charges thereon, and filing a receipt for the same with the clerk of this court, and with the trustee, he should have a credit therefor on his first note.

On the 6th of June, 1828, the rule to show cause why Mr. Leckie should not be put into possession, came on to be heard, and was argued by Mr. Wallach and Mr. Barrell for Mr. Leckie, and by Mr. Swann for the defendants.

For the defendants it was alleged, that the decree was only for sale and conveyance, not for possession; that the court had no jurisdiction to order the marshal to give possession. That W. J. McCormick claims under the tax-sale, and that Mr. Leckie had only paid up the taxes and costs, with ten per cent. on the taxes due at the time of the tax-sale, and the taxes which had since accrued, and which had been paid by W. J. McCormick, but had not paid the ten per cent. interest upon $23.84 which was the amount of the taxes so paid by W. J. McCormick since the tax-sale; nor had Mr. Leckie paid him $120.41, expended by him for improvements made since the tax-sale and within the two years allowed for redemption. The sale for taxes was made on the 14th of June, 1825. The taxes and expenses, with ten per cent. per annum thereon, were paid by Leckie to the register of the city on the 13th of June, 1827. The defendant McCormick claims the property in his own right, and avers that he has a right to receive a deed from the mayor of the city, under the tax-sale, because Mr. Leckie had not paid the interest on the $23.84, and the $120.41 for improvements. The right of Mr. W. J. McCormick is placed by his counsel, upon the construction of the tenth section of the city charter of 1820, by which it is provided, "that if, within two years from the day of any such sale" &c. "the proprietor or proprietors of any property which shall have been so sold" (for taxes) "his, her, or their heirs, agents, or legal representatives, shall repay to such purchaser the moneys paid for the taxes and expenses as aforesaid, together with ten per cent. per annum, as interest thereon, or make a tender thereof, or shall deposit the same in the hands of the mayor of the city or other officer of the corporation appointed to receive the same, for the use of such purchaser," &c., "he, she, or they, shall be reinstated in his, her, or their original right and title as if no such sale had been made." And provided also, "that minors, mortgagees, and others having equitable interests in real property which shall be sold for taxes as aforesaid, shall be allowed one year after such minor's coming to, or being of, full age; or after such mortgagees, or others having equitable interests, obtaining possession of, or a decree for the sale of, such property, to redeem the property so sold, from the purchaser or purchasers, his, her, or their assigns, on paying the amount of purchase-money so paid therefor, with ten per cent. interest thereon as aforesaid, and all the taxes which have been paid thereon by the purchaser or his assignees, between the day of sale and the period of such redemption with ten per cent. interest on the amount of such taxes; and also the full value of the improvements which may have been made or erected on such property by the purchaser or his assigns while the same was in his or her possession." It is contended that Mr. Leckie could not redeem under the first of those provisos because he was not the proprietor at the time of the tax-sale, nor the "legal representative" of such proprietor; and that the only effect of redemption is to reinstate the proprietor, his

heir or legal representative in his original right and title as if no such sale had been made; and therefore if Mr. Leckie can redeem at all, it must be under the second proviso in favor of minors, mortgagees, and others having equitable interests; and before he can redeem under that clause, he must pay the interest upon the $23.84 paid by Mr. McCormick for taxes accruing since the tax-sale; and the $120.41 for improvements made while the property was in his possession.

It seemed, however, to the court, that the second proviso is cumulative, not exclusive. That it was meant to give to minors, &c., an additional privilege, not to prevent them from redeeming under the first proviso. It was intended that if, by reason of their minority, or by being mortgagees not in possession, or by having equitable interests only, they should be prevented from redeeming within the two years under the first proviso, they might redeem after the expiration of the two years, as soon as their disability should be removed. The second proviso does not prevent a minor, or mortgagee, &c., from redeeming under the first. If Mr. Leckie can redeem at all, it must be under the first proviso; for he is not a minor, nor a mortgagee, nor a person having an equitable interest, By the decree of the court the legal title was sold. Mr. Leckie became the purchaser, and might maintain his action of ejectment. He was the "legal representative" of the proprietor within the meaning of the first proviso. The tax-sale does not deprive the proprietor of his legal estate. The freehold or seisin in fact and in law, remain in him until the expiration of the two years allowed for redemption. Until that time, the purchaser has no title at law or in equity. It is only an inchoate estate; a contingent interest; an incumbrance to the extent of the taxes, and expenses of sale. If the proprietor, within the two years, sell the property, the vendee is either as the proprietor, or as the legal representative of the proprietor, entitled to redeem. It cannot be intended, by the act, that upon repayment to the purchaser at the tax-sale, of the taxes, interest, and expenses by the vendee of the original proprietor, the vendor, (the original proprietor,) should be reinstated in his original title, so as to defeat his intermediate sale; for the law authorizes the "legal representative" of the original proprietor to redeem, and declares that he (the legal representative) shall be reinstated in his original right and title, "as if no such" (tax) "sale had been made." It is evident that the intention of the law was that the right acquired by the purchaser at the tax-sale by paying into the city treasury the taxes and expenses of sale, should become void by the repayment, within the two years, of the taxes, interest, and expenses, by any person claiming title to the lot sold; so that the title should remain just as it would have been, if no sale had been made. The word

"reinstate," it is true, does not, with strict accuracy apply to a person who has purchased the right of the original proprietor after the tax-sale; yet, as the law says that the legal representative of the proprietor shall be reinstated in his original right, it is clear that the legislature meant to vest in the legal representative, all the right which would have been reinvested in the proprietor, if the redemption-money had been paid by him, instead of his legal representative; and that they did not intend to restrict the word "reinstated" to its literal meaning; for if they did, the legal representative could, in no case be benefited under the act, by the redemption. The literal meaning of the word "reinstate" would confine the redemption to him in whom the title was at the time of the tax-sale, although the redemption-money were paid by his vendee. The legal representative is to have the same right and title, after the redemption, as he would have had if no such tax-sale had been made. This is the clear meaning of the act; and the word "reinstated" must be construed consistently with, and cannot control that meaning.

The court of chancery had authority to decree a sale of the lots. It had as full power to order the sale as Caldwell, the trustee, and McCormick, the cestui que trust, if he had been alive, would have had. A sale under the decree transferred the legal estate as completely, as if it had been conveyed by them. Like the title under a sheriff's sale, by fieri facias, the title under the decree passes by the sale, without any deed of conveyance. The sale conveyed all the title of all the parties to the suit. Mr. Leckie, the purchaser at that sale, was then the legal representative of the proprietor, within the meaning of the first proviso in the tenth section of the charter, and had (especially by the leave and order of the court,) a right to redeem. If he had a right to redeem, the redemption enured to his benefit by the express words of the proviso. I have said that the privileges allowed to minors, mortgagees, &c., by the second proviso of that section, are cumulative to those allowed by the first proviso. This, I think, is apparent from the reason of the case, and from the words of the proviso. It is not reasonable to suppose that the legislature meant to put infants in a worse situation than adults. Such a supposition would be contrary to the spirit of the common law, and the whole tenor of legislation; and no reason can be given why they should not be allowed to redeem within the two years, as well as adults. If they should redeem within the two years, they would not be obliged to pay for any improvements; not only because the law expressly authorizes redemption upon the repayment of the taxes and expenses and ten per cent. interest only, but because the purchaser under such tax-sale is not presumed nor permitted, by virtue of the sale, to take possession of the property, nor had he any legal title thereto; so that if,

before the expiration of the two- years, he should by any means obtain possession and make improvements, he would make them at his own peril. But if no redemption be made within the two years, and the purchaser at the tax-sale pay up the balance of the purchase-money and obtain a deed, and make improvements, then it is reasonable that any person, who is by law permitted to redeem after the two years, should pay for any improvements which the purchaser should have made after the expiration of the two years, and after his title had become complete at law; or, in the words of the second proviso, "while the same was in his possession;" the legislature not having contemplated that he could obtain the possession until the two years should have expired. By the words of this proviso, the minor coming to redeem must not only pay the taxes and expenses, and ten per cent. interest thereon, but must pay the amount of purchase-money so paid for, with ten per cent. interest thereon, and all the taxes that have been paid thereon by the purchaser, or his assigns, between the day of sale and the period of redemption, with ten per cent. interest on the amount of such taxes, and also the full value of the improvements which may have been made or erected on such property by the purchaser, or his assigns, while the same was in his or their possession. The person, who redeems under the second proviso, must pay the purchase-money so paid therefor. Until the expiration of the two years, nothing is to be paid by the purchaser but the taxes and expenses of sale. The purchase-money, as such, is not to be paid until the two years have elapsed. "The purchase-money so paid therefor" must, therefore, include not only the taxes and expenses of sale, paid at the time of the sale, but the residue of the purchase-money paid after the two years. This shows that the second proviso only applies to such as come to redeem after the expiration of the two years. A proprietor who seeks to redeem within the two years, therefore, cannot be at all affected by the second proviso, and consequently cannot, under that proviso, be obliged to pay for any improvements, nor for the interest upon the taxes paid by the purchaser after the sale. The non-payment by Mr. Leckie for those improvements and that interest, therefore, is no reason why he should not be put into possession of the property which he has purchased.

But it is said that the decree of the court is for the sale and conveyance of the property only, not for the possession; and that the defendants cannot be in contempt for not delivering up the possession.

THE COURT, however, was of opinion that its power to decree a sale of the property included a power to compel all the parties to submit to such decree, and to carry it into effect; and on the 6th of June, 1828, an injunction was issued by the court, commanding the defendants and all other persons to deliver the possession to Mr. Leckie. This injunction having been served and disobeyed, and it having been suggested that Mrs. McCormick, the widow of the intestate, was entitled to dower, a commission was issued, by order of the court and consent of parties, on the 14th of June, 1828, to assign her dower, which was returned executed; and the report of the commissioners assigning her dower was, on the 21st of June, 1828. confirmed by the court; and, upon the authority of the case of Garretson v. Cole, 1 Har. & J. 389, a writ of habere facias possessionem was ordered, agreeably to the form adopted by the chancellor in that case; which is not exactly the form of the common-law writ, but was framed by the chancellor to suit the occasion. See Act Md. 1785, c. 72, § 27.